1  Mia Farber (SBN 131467)
   Mia.Farber@jacksonlewis.com
2  Eric J. Gitig (SBN 307547)
   Eric.Gitig@jacksonlewis.com
3  JACKSON LEWIS P.C.
   725 South Figueroa Street, Suite 2500
4  Los Angeles, California 90017-5408
   Telephone: (213) 689-0404
5  Facsimile: (213) 689-0430

6  Attorneys for Defendant
   TA OPERATING LLC

7

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10

11 | PHILLIP  DANIELS,  an  individual; | Case No.: 2:22-cv-6574
   | MARKUS  BEGAY,  an  individual; and |
12 | on behalf of all others similarly situated, | **NOTICE OF REMOVAL OF ACTION**
   |                                    | **TO THE UNITED STATES DISTRICT**
13 |                Plaintiffs,         | **COURT FOR THE CENTRAL**
   |                                    | **DISTRICT OF CALIFORNIA**
14 |                vs.                 | **PURSUANT TO 28 U.S.C. §§ 1332,**
   |                                    | **1441, 1446, and 1453 (CAFA)**
15 | TA  OPERATING  LLC,  a  California |
   | limited liability company; and DOES 1 | (Filed concurrently with Notice of
16 | through 100, inclusive,            | Removal; Declarations of Eric J. Gitig,
   |                                    | Mark R. Young, and Karen Kaminski;
17 |                Defendants.         | Civil Case Cover Sheet; Notice of
   |                                    | Interested Parties; and Corporate
18 |                                    | Disclosure Statement)
19 |                                    | Complaint Filed:  August 5. 2022

20

21      **TO  THE  HONORABLE  CLERK  OF  THE  UNITED  STATES  DISTRICT**

22 **COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, PLAINTIFFS PHILLIP**

23 **DANIELS AND MARKUS BEGAY, AND THEIR ATTORNEYS OF RECORD:**

24      PLEASE  TAKE  NOTICE  that  Defendant  TA  OPERATING  LLC  ("Defendant")

25 hereby invokes this Court's jurisdiction under the provisions of 28 U.S.C. §§ 1332, 1441,

26 1446 and 1453, and removes the above-entitled action to this Court from the Superior Court

27 of the State of California in and for the County of San Bernardino based on the Class Action

28 Fairness Act of 2005 ("CAFA").  In support thereof, Defendant asserts the following:

## SERVICE AND PLEADINGS FILED IN STATE COURT

1.      On August 5, 2022, Plaintiffs PHILLIP DANIELS and MARKUS BEGAY (collectively, "Plaintiffs") filed an unverified Class Action Complaint against Defendant in the Superior Court of the State of California for the County of San Bernardino, entitled *PHILLIP DANIELS, and individual; MARKUS BEGAY, an individual; and on behalf of all others similarly situated, Plaintiffs, v. TA OPERATING LLC, a California limited liability company; and DOES 1 through 100, inclusive, Defendants*, Case No. CIVSB2215247, which sets forth the following ten causes of action: (1) failure to pay overtime wages; (2) failure to pay minimum wages; (3) failure to provide meal periods; (4) failure to provide rest periods; (5) waiting time penalties; (6) wage statement violations; (7) failure to timely pay wages; (8) failure to indemnify; (9) violations of Labor Code section 227.3; and (10) unfair competition ("Complaint"). As stated in paragraph 21 therein, "Plaintiffs seek to represent a class of all current and former non-exempt employees of Defendants within the State of California at any time commencing four (4) years preceding the filing of their complaint up until the time that notice of the class action is provided to the class."

2.      Defendant first received Plaintiffs' Summons and Complaint when they were served on August 15, 2022.  (Declaration of Eric J. Gitig ("Gitig Decl.") ¶ 2.) A true and correct copies of the Summons, Complaint, and other related court documents received by Defendant on August 15, 2022 are attached as **Exhibit "A"** to the Gitig Declaration.

3.      On September 12, 2022, Defendant filed and served an Answer to the Complaint in the San Bernardino Superior Court, making a general denial as permitted by California Code of Civil Procedure § 431.30(d) and asserting various affirmative defenses. (*Id.* at ¶ 3.) A true and correct copy of Defendant's Answer is attached as **Exhibit "B"** to the Gitig Declaration.

4.      As of the date of this Notice of Removal, **Exhibits "A"** and **"B"** to the Gitig Declaration constitute all of the pleadings received or filed by Defendant in this matter. (*Id.* at ¶ 4.)

/ / /

**TIMELINESS OF REMOVAL**

5.     This Notice of Removal has been filed within 30 days after Defendant was first served with a copy of Plaintiffs' Summons and Complaint on August 15, 2022. (*Id.* at ¶ 2.) Therefore, it has been filed within the time period mandated by 28 U.S.C. § 1446(b). *Murphy Bros. v. Michetti Pipe Stringing*, 526 U.S. 344, 354 (1999) ("[T]he defendant's period for removal will be no less than 30 days from service, and in some categories, it will be more than 30 days from service, depending on when the complaint is received.").

**VENUE IS PROPER**

6.     This action was filed in the Superior Court in and for the County of San Bernardino. Thus, venue of this action properly lies in the United States District Court for the Central District of California pursuant to 28 U.S.C. §§ 84(c)(1) and 1441(a). Venue of this action is also proper pursuant to 28 U.S.C. § 1391, which provides that an action may be venued in a judicial district where a substantial part of the events or omissions giving rise to the claim occurred, and where, based on information and belief, the plaintiff resides. (*See* Gitig Decl. ¶ 2, **Exhibit "A"** ["Complaint"] at ¶ 10.)

**REMOVAL IS PROPER BASED ON CLASS ACTION FAIRNESS ACT**

7.     Removal of this action is proper under CAFA, 28 U.S.C. §§ 1332 *et seq.* Section 4 of CAFA, 28 U.S.C. § 1332(d)(2), has been amended to read, in relevant part:

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which – (A) any member of a class of plaintiffs is a citizen of a State different from any defendant.

8.     In addition, CAFA provides for jurisdiction in the district courts only where the proposed class involves 100 or more members, or where the primary defendants are not States, State officials, or other governmental entities. 28 U.S.C. § 1332(d)(5).

9.     As set forth below, this is a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1332(d), in that it is a civil action filed as a class action involving more than 100 members, the matter in controversy – based on the allegations in the Complaint – the matter in controversy exceeds the sum of $5,000,000, exclusive of interest and costs,

and Plaintiffs are citizens of a state different from Defendant. *See* 28 U.S.C. §§ 1332(d) and 1453. Furthermore, Defendant is not a State, State official, or other governmental entity.

**A.    The Putative Class Contains More Than 100 Members.**

10.    CAFA provides that the district courts shall not have jurisdiction over class actions where "the number of members of all proposed plaintiff classes in the aggregate is less than 100." 28 U.S.C. § 1332(d)(5).

11.    Here, Defendant's records identify in excess of 100 individuals who, like Plaintiffs, have been employed by Defendant as non-exempt employees in the State of California between August 5, 2018 (four years prior to the filing of the Complaint) and the present (collectively referred to herein as "Putative Class Members" or the "Putative Class"; the period between August 5, 2018 and the present is referred to herein as the "Putative Class Period"). (Declaration of Karen Kaminski ("Kaminski Decl.") at ¶ 5.) Accordingly, the numerosity requirement for jurisdiction under CAFA is satisfied.

**B.    None Of The Named Defendants Are Government Entities.**

12.    Defendant is not a State, a State official, or any other governmental entity. (Declaration of Mark R. Young ["Young Decl."] at ¶ 4.)

**C.    Minimal Diversity Is Satisfied Under CAFA.**

13.    The standard for establishing diversity of citizenship under CAFA is different than diversity jurisdiction under 28 U.S.C. 1332(a)-(c). CAFA's diversity requirement is satisfied when there is minimal diversity, *i.e.*, when at least one member of a class of plaintiffs is a citizen of a state in which none of the defendants are citizens. 28 U.S.C. § 1332(d)(2); *see Snyder v. Harris*, 394 U.S. 332, 340 (1969) ("if one member of a class is of diverse citizenship from the class' opponent, and no nondiverse members are named parties, the suit may be brought in federal court even though all other members of the class are citizens of the same State as the defendant."); *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1090-91 (holding that to achieve its purposes, CAFA provides expanded original diversity jurisdiction for class actions meeting the minimal diversity requirement set forth in 28 U.S.C.

§ 1332(d)(2)); *Bradford v. Bank of Am. Corp.*, No. CV 15-5201-GHK (JCx), 2015 U.S. Dist. LEXIS 120800, at *13 (C.D. Cal. Sep. 10, 2015) ("[defendant] needed only to establish that one plaintiff was a citizen of a different state from any one defendant at the time of removal.").

14.    Citizenship of the parties is determined by their citizenship status at the action's commencement. *See Mann v. City of Tucson*, 782 F.2d 790 (9th Cir. 1986).

15.    For individuals, citizenship is determined by a person's domicile. *Lew v. Moss*, 797 F.2d 747, 749 (9th Cir. 1986). "A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). While residence and citizenship are not the same, a person's place of residence is *prima facie* evidence of his or her citizenship. *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519-20 (10th Cir. 1994) (allegation by party in state court complaint of residency "created a presumption of continuing residence in [state] and put the burden of coming forward with contrary evidence on the party seeking to prove otherwise"); *see also Smith v. Simmons*, 2008 U.S. Dist. LEXIS 21162, at *22 (E.D. Cal. 2008). Furthermore, a person's intention to remain may be established by his or her place of employment. *Youn Kyung Park v. Holder*, 572 F.3d 619, 625 (9th Cir. 2009); *see also Francisco v. Emeritus Corp.*, No. CV 17-02871-BRO (SSx)), 2017 U.S. Dist. LEXIS 90131, at *10 (C.D. Cal. June 12, 2017) ("Plaintiff's residence and employment in California are sufficient evidence of his intent to remain in California.").

16.    Defendant is informed and believes, as alleged by Plaintiffs in the Complaint, that both Plaintiffs were, at the time this action was commenced, and still are, residents and citizens of the State of California. (Complaint at ¶¶ 2 and 3; Kaminski Decl. at ¶ 3.)

17.    For purposes of removal under CAFA, the citizenship of a limited liability company is analyzed as an "unincorporated association" under Section 1332(d)(10). *Ferrell v. Express Check Advance of Georgia*, 591 F.3d 698, 704 (4th Cir. 2010); *Ramirez v. Carefusion Res., LLC,* No. 18-2852, 2019 U.S. Dist. LEXIS 112995, at *5 (S.D. Cal. July 1, 2019). CAFA expressly states that "for purposes of this section .... an unincorporated association or corporation is deemed to be a citizen of the state where it has its principal place

1   of business and under whose laws it is incorporated or organized." 28 U.S.C. § 1332(d)(10).

2   This is different from Section 1332(c) which has been interpreted to provide that "[a]n LLC

3   is a citizen of every state in which is owners/members are citizens." *Johnson v. Columbia*

4   *Properties Anchorage,* 437 F.3d 894, 899 (9th Cir. 2006).

5         18.   With respect to ascertaining a corporation's principal place of business, the

6   United States Supreme Court has adopted the "nerve center test." *Hertz Corp. v. Friend,*

7   559 U.S. 77, 80-81 (2010). Under the nerve center test, a corporation's principal place of

8   business is where a corporation's high-level officers direct, control and coordinate the

9   corporation's activities. *Id.* A corporation can only have one "nerve center." *Id.* at 93-94.

10  In evaluating where a corporation's "nerve center" is located, courts will look to the center

11  of overall direction, control, and coordination of the company and will no longer weight

12  corporate functions, assets, or revenues in each state. *Id.*

13        19.   At the time Plaintiffs filed the Complaint and presently, Defendant has been a

14  limited liability company organized under the laws of the State of Delaware.[1] (Young Decl.

15  at ¶ 3.) At all relevant times, Defendant's company headquarters – and thus its principal place

16  of business – has been in the State of Ohio where the majority of Defendant's executive,

17  administrative, financial and management functions are conducted, and from where the

18  majority of Defendant's high-level officers direct, control, and coordinate and control the

19  company's operations and activities. (Id.) Most members of Defendant's executive team

20  maintain their offices in the State of Ohio, while none of Defendant's executive officers reside

21  in the State of California. (Id.) Accordingly, for purposes of removal under CAFA, Defendant

22  is citizen of the States of Delaware and Ohio and is not a citizen of the State of California.[2]

23        20.   Given the above, minimal diversity exists under CAFA because at least one

24  member of the Putative Class (either Plaintiff) was, at the time this action was commenced

25

26  [1]   Contrary to Plaintiffs' identification of Defendant as "a California limited liability
    company," public records definitively establish that Defendant is a Delaware limited
27  liability company.  (Gitig Decl. at ¶ 6, **Exhibit "C"** [Business Search Records].)

28  [2]   Alternatively, Defendant is a citizen of the States of Maryland and Ohio based on
    the states in which its sole member is a citizen. (Young Decl. at ¶¶ 5 and 6.)

– and is still believed to be – a citizen of the State of California, while Defendant was – and still is – a citizen of the States of Delaware and Ohio.[3] 28 U.S.C. § 1332(d)(2).

**D.    The Amount In Controversy Exceeds $5,000,000 Based On A Plausible Reading Of The Allegations Of The Complaint.[4]**

21.    Under CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000. *See* 28 U.S.C. § 1332(d)(6). Congress intended federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory relief)." Sen. Jud. Comm. Rep., S. REP. 109-14, at 42. Moreover, any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction. S. Rep. 109-14, at 42-43 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case . . . . Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provisions should be read broadly . . .").

22.    In determining whether the amount in controversy exceeds $5,000,000, the Court must presume Plaintiffs will prevail on each and every one of their claims. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter,* 199 F.Supp. 993, 1001 (C.D. Cal. 2002)

---

[3]    The citizenship of the Doe defendants is immaterial for the purpose of determining minimal diversity under CAFA. 28 U.S.C. § 1441(a); *See Serrano v. 180 Connect, Inc.,* 478 F.3d 1018, 1021 (9th Cir. 2007).

[4]    Defendant denies each and every allegation set forth by Plaintiffs in the Complaint and denies that Plaintiffs or Putative Class Members are entitled to any compensatory or statutory damages, injunctive relief, restitution, civil penalties, attorneys' fees, or any other relief.  Defendant also denies that this action can proceed as a class action, in part because Plaintiffs both signed an arbitration agreement with a class waiver.  Notwithstanding the above, removal of this action is proper given that removal is based on the allegations asserted in the Complaint.

1  (*citing Burns v. Windsor Ins. Co.,* 31 F.3d 1092, 1096 (11th Cir. 1994) (the amount in

2  controversy analysis presumes that "plaintiff prevails on liability"); *Angus v. Shiley Inc.,*

3  989 F.2d 142, 146 (3d Cir. 1993) ("the amount in controversy is not measured by the low

4  end of an open-ended claim")). Moreover, the argument and facts set forth herein may

5  appropriately be considered in determining whether the jurisdictional amount in

6  controversy is satisfied. *Cohn v. Petsmart, Inc.,* 281 F.3d 837, 843, n.1 (9th Cir. 2002)

7  (*citing Willingham v. Morgan,* 395 U.S. 402, 407 n.3 (1969)).

8      23.    Notably, "[t]here is no obligation by defendant to support removal with

9  production of extensive business records to prove or disprove liability and/or damages with

10  respect to plaintiff or the putative class members at this premature (pre-certification) stage

11  of the litigation." *Muniz v. Pilot Travel Ctrs. LLC,* 2007 U.S. Dist. LEXIS 31515, at *15

12  (E.D. Cal. Apr. 30, 2007). Rather, a defendant seeking removal must prove by a

13  preponderance of the evidence the aggregate amount in controversy exceeds the

14  jurisdictional minimum. *Jauregui v. Roadrunner Transp. Servs*., 28 F.4th 989, 991-994 (9th

15  Cir. 2022) (finding that the district court erred in imposing – both explicitly and in its analysis

16  – a presumption against CAFA jurisdiction, and holding instead that the defendant was only

17  required to show the amount in controversy by a preponderance of evidence); *Rodriguez v.*

18  *AT&T Mobility Servs. Ltd. Liab. Co.,* 728 F.3d 975, 977 (9th Cir. 2013) ("the proper burden

19  of proof imposed upon a defendant to establish the amount in controversy is the

20  preponderance of the evidence standard"); *see Lewis v. Verizon Commc'ns, Inc.,* 627 F.3d

21  395, 400 (9th Cir. 2010) ("The amount in controversy is simply an estimate of the total

22  amount in dispute, not a prospective assessment of defendant's liability"); *Arias v. Residence*

23  *Inn,* 936 F.3d 920, 922, 925 (9th Cir. 2019) (the removing defendant may rely on reasonable

24  assumptions in estimating the amount in controversy, which "need not be proven").

25      24.    In *Dart Cherokee Basin Operating Company, LLC v. Owens,* the United States

26  Supreme Court held that, whereas here, the complaint is silent as to whether the amount in

27  controversy meets CAFA's jurisdictional threshold of $5,000,000 "a defendant's notice of

28  removal need include only a *plausible* allegation that the amount in controversy exceeds the

jurisdictional threshold." 135 S. Ct. 547, 554 (2014) (emphasis added). Following *Dart,* the Ninth Circuit confirmed "a removing defendant's notice of removal need not contain evidentiary submissions but only plausible allegations of the jurisdictional elements," and further that "when a defendant's allegations of removal jurisdiction are challenged, the defendant's showing on the amount in controversy may rely on reasonable assumptions." *Salter v. Quality Carriers, Inc.,* 2020 U.S. App. LEXIS 28364, *6-7 (9th Cir. Sep. 8, 2020) (citations and internal quotation marks omitted). Further, "'[n]o "antiremoval presumption attends cases invoking CAFA' because 'Congress enacted [CAFA] to facilitate adjudication of certain class actions in federal court.'" *Adams v. Toys 'R' US – Delaware, Inc.,* 2015 U.S. Dist. LEXIS 11338, at *5-6 (N.D. Cal. Jan. 29, 2015) *quoting Dart,* 135 S. Ct. at 554. On the contrary, courts are required to interpret CAFA's provisions broadly in favor of removal. *Jordan v. Nationstar Mortg. LLC,* 781 F.3d 1178, 1183-84 (9th Cir. 2015).

25.     Moreover, if a plaintiff asserts statutory violations, the court must assume that the violation rate is 100% unless the plaintiff specifically alleges otherwise. *See Muniz v. Pilot Travel Ctrs. LLC,* 2007 U.S. Dist. LEXIS 31515, at *12-13 (E.D. Cal. Apr. 30, 2007) ("As these allegations reveal, plaintiff includes no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%, used by defendant in its calculations. Plaintiff is the 'master of [her] claim[s],' and if she wanted to avoid removal, she could have alleged facts specific to her claims which would narrow the scope of the putative class or the damages sought.") (*citing Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392 (1987)); *see also Arreola v. The Finish Line,* No. 14- CV-03339-LHK, 2014 WL 6982571, at *4 (N.D. Cal. Dec. 9, 2014) ("District courts in the Ninth Circuit have permitted a defendant removing an action under CAFA to make assumptions when calculating the amount in controversy—such as assuming a 100 percent violation rate, or assuming that each member of the class will have experienced some type of violation— when those assumptions are reasonable in light of the allegations in the complaint."); *Coleman v. Estes Express Lines, Inc.,* 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010)

1    ("[C]ourts have assumed a 100% violation rate in calculating the amount in controversy

2    when the complaint does not allege a more precise calculation.").

3        26.    While Plaintiffs do not allege a specific amount in damages, their Complaint

4    was filed as an "unlimited" jurisdiction civil case on behalf of the Putative Class. As such,

5    Plaintiffs are claiming that the monetary damages and restitution they are seeking exceeds

6    the $25,000 minimum jurisdiction limits of the California Superior Court,[5] which is

7    confirmed by the fact that they designated their case as "Unlimited (Amount demanded

8    exceeds $25,000)" on their Civil Case Cover Sheet. (Gitig Decl. ¶ 2, **Exhibit "A"** at Civil

9    Case Cover Sheet.) Thus, based on the allegations in the Complaint, which contend that

10   Plaintiffs' claims are "are typical of those claims which could be alleged by any Class

11   Members, and the relief sought is typical of the relief which would be sought by each

12   Class Member in separate actions," and that "Plaintiffs and Class Members sustained

13   injuries and damages arising out of and caused by Defendants' common course of

14   conduct," it is plausible that Plaintiffs are seeking at least $25,000 [the unlimited

15   jurisdictional amount] per Putative Class Member, which places over $125,000,000 in

16   controversy. (Complaint at ¶ 27; Kaminski Decl. at ¶ 5.)  *See Abrego v. The Dow Chem.*

17   *Co.,* 443 F.3d 676, 689 (2006) (finding jurisdictional amount met where complaint sought

18   no specific amount in damages but pled the amount in controversy to exceed $25,000 and

19   there were 1,160 class members).

20       27.    In the alternative, and without admitting that Plaintiffs could recover any

21   damages whatsoever, a plausible reading of the causes of action alleged in the Complaint[6]

22   also conservatively places an aggregate amount in controversy exceeding **$7,978,333**,

23   exclusive of attorneys' fees, interest, and costs, as follows:

24

25

26   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
     [5]    *See* California Code of Civil Procedure §§ 86(a) and 88.

27   [6]    *See e.g. Lucas v. Michael Kors (USA) Inc.,* No. CV 18-1608-MWF (MRWx), 2018
     U.S. Dist. LEXIS 78510, at *8 (C.D. Cal. May 9, 2018) ("Defendants may use reasonable

28   assumptions in calculating the amount in controversy for purposes of removal.").

### a. Failure to Pay Overtime Wages (First Cause of Action)

The Complaint alleges that Defendant, "at times, failed to pay overtime wages to Plaintiffs and Class Members, or some of them." (Complaint at ¶¶ 11, 35-37.) Thus, based on the allegations in the Complaint, it is plausible that Plaintiffs are seeking to recover, on average, at least one hour of overtime wages for every four weeks worked for all Putative Class Members, which would place over $825,000 in controversy in connection with their overtime claim ($16.50 overtime rate [$11.00[7] x 1.5] x 0.25 hours per week x 200,000 workweeks). (Kaminski Decl. at ¶ 6.)

### b. Failure to Pay Minimum Wages (Second Cause of Action)

The Complaint alleges that Defendant, "at times, failed to pay minimum wages to Plaintiffs and Class Members, or some of them" and that "Plaintiffs and Class Members are entitled to recover the full amount of unpaid minimum wages [and] liquidated damages." (Complaint at ¶¶ 12, 41-43.) Thus, based on the allegations in the Complaint, it is plausible that Plaintiffs are seeking to recover, on average, at least one hour of minimum wages for every four weeks worked for all Putative Class Members, which would place over $1,100,000 in controversy in connection with their minimum wage claim ($11.00 minimum wage rate x 0.25 hours per week x 200,000 workweeks, plus an equal amount in liquidated damages). (Kaminski Decl. at ¶ 6.)

### c. Failure to Provide Meal Periods (Third Cause of Action)

Plaintiffs allege that "Defendants have, at times, failed to provide Plaintiffs and Class Members, or some of them, full, timely thirty (30) minute uninterrupted meal period[s] for days on which they worked more than five (5) hours in a work day and a second thirty (30) minute uninterrupted meal period for days on which they worked in excess of ten (10) hours in a work day." (Complaint at ¶¶ 13, 48-51.) Plaintiffs further assert that, at times, "Defendants failed to provide one (1) additional hour of pay at the Class Member's regular

---

[7] For purposes of this Notice of Removal, Defendant utilized an hourly rate of ($11.00 per hour). *See* California Department of Industrial Relations History of California Minimum Wage Chart (https://www.dir.ca.gov/iwc/minimumwagehistory.htm).

rate of compensation on the occasions that Class Members were not provided compliant meal periods," and that "Plaintiffs and Class Members are entitled to recover the full amount of their unpaid additional pay for unprovided compliant meal periods." (Id.)  Thus, based on the allegations in the Complaint, it is plausible that Plaintiffs are seeking to recover, on average, at least one meal period premium for every four weeks for all Putative Class Members, which would place over $550,000 in controversy in connection with their meal period claim ($11.00 hourly rate x 0.25 meal periods per week x 200,000 workweeks).  (Kaminski Decl. at ¶ 6.)

### d.  Failure to Provide Rest Periods (Fourth Cause of Action)

Plaintiffs allege that "Defendants have, at times, failed to authorize and permit Plaintiffs and Class Members, or some of them, to take rest periods of at least ten (10) minutes per four hours worked or major faction thereof" and that "Defendants failed to provide one (1) additional hour of pay at the Class Member's regular rate of compensation on the occasions that Class Members were not provided compliant rest periods." (Complaint at ¶¶ 14, 56-59.)  Thus, based on the allegations in the Complaint, it is plausible that Plaintiffs are seeking to recover, on average, at least one rest period premium for every four weeks for all Putative Class Members, which would place over $550,000 in controversy in connection with their rest period claim ($11.00 hourly rate x 0.25 rest periods per week x 200,000 workweeks). (Kaminski Decl. at ¶ 6.)

### e.  Failure to Pay All Wages Due Upon Termination (Fifth Cause of Action)

Plaintiffs assert that, due to Defendant's alleged failure to pay "Plaintiffs and Class Members or some of them, the full amount of their wages owed to them … including for, without limitation, failing to pay overtime wages, minimum wages, for withholding wages, and premium wages," Defendant willfully "failed to pay Plaintiffs and Class Members all wages earned prior to resignation or termination," thereby entitling Plaintiffs and Putative Class Members to "waiting time penalties from the date their earned and unpaid wages were due, upon termination or resignation, until paid, up to a maximum of thirty (30) days." (Complaint at ¶¶ 15, 63-67.)  During the applicable three-year statute of limitations period (i.e., August 5, 2019 to the present), at least 2,000 Putative Class Members have been terminated, resigned,

or have otherwise separated from their employment with Defendant.  (Kaminski Decl. at ¶ 5.)
Thus, based on the allegations in the Complaint, it is plausible that Plaintiffs have placed over
$3,520,000 in controversy in connection with their claim for waiting time penalties ((2,000
Putative Class Members x $11.00 hourly rate x 8 hours x 30 days) x 66.66%).  (Id.)

### f.    Failure to Provide Accurate Wage Statements (Sixth Cause of Action)

Plaintiffs allege that "Defendants have, at times, failed to furnish Plaintiffs and Class
Members, or some of them, with itemized wage statements," and that, as a result,
"Defendants [knowingly, intentionally, and willfully] failed to provide Plaintiffs and Class
Members accurate itemized wage statements … on each and every wage statement that
should have been provided."  (Complaint at ¶¶ 16, 71-73.)  Given these purported violations,
Plaintiffs claim they and Putative Class Members "are entitled to recover $50 for the initial
pay period during the period in which violation of Labor Code section 226 occurred and $100
for each violation of Labor Code section 226 in a subsequent pay period, not to exceed an
aggregate $4,000.00 per employee."  (Id. at ¶¶ 74-75.)  During the one-year statute of
limitations period mandated under Labor Code section 226 (*i.e.*, August 5, 2021 to the
present), Defendant has issued in excess of 15,000 bi-weekly wage statements to over 2,000
Putative Class Members.  (Kaminski Decl. at ¶ 7.)  Thus, based on the allegations in the
Complaint, it is plausible that Plaintiffs have placed over $933,333 in controversy in
connection with their wage statement claim (($50 per first wage statement x 2,000 Putative
Class Members who worked between August 5, 2021 and September 14, 2022, plus $100 per
each subsequent wage statement x 13,000 pay periods worked by Putative Class Members
between August 5, 2021 and September 14, 2022, up to a maximum of $4,000 per Putative
Class Member) x 66.66%).  *See* Labor Code § 226(e)(1); *see also Lucas*, 2018 U.S. Dist.
LEXIS 78510, at *25 (noting that "it is not unreasonable to assume that, with this many
violations alleged by Plaintiff, every one of the wage statements issued during the one-year
period could very likely have been noncompliant.").

/ / /

/ / /

### g. *Failure to Reimburse Work Expenses (Eighth Cause of Action)*

The Complaint alleges Defendant "required Plaintiff and Class Members, or some of them, to incur, at times, necessary expenditures or losses in direct consequence of the discharge of their duties or at the obedience to the directions of Defendants that included, without limitation: purchasing and using cellular phones for work-related purposes," and that "Plaintiffs and Class Members are entitled to recover reimbursement for their … losses and/or expenditures." (Complaint at ¶¶ 18, 86-89.) Thus, based on the allegations in the Complaint, it is plausible that Plaintiffs are seeking to recover, on average, at least $2.50 per week for all Putative Class Members, which would place $500,000 in controversy in connection with their expense reimbursement claim ($2.50 per week x 200,000 workweeks). (Kaminski Decl. at ¶ 6.)

28.    Plaintiffs also seek an unspecified amount of attorneys' fees in connection with their putative class claims for unpaid overtime wages, unpaid minimum wages, meal period violations, rest period violations, wage statement violations, expense reimbursements, and violation of Labor Code section 227.3, which the Court should consider and include in the amount in controversy. (Complaint at ¶¶ 37, 43, 51, 59, 75, 89, 95, and Prayer.) *See, e.g., Goldberg v. CPC Int'l, Inc.* 678 F.2d 1365, 1367 (9th Cir. 1982), cert. denied, 459 U.S. 945 (1982); *Galt G/S v. JSS Scandinavia* 142 F.3d 1150, 1155-56 (9th Cir. 1998); *Solorzano v. Alsco Inc.*, 2021 U.S. Dist. LEXIS 129517 at *3 (C.D. Cal. July 12, 2021) ("Future attorney's fees must be included in the amount in controversy.") (citations omitted). Attorneys' fee awards in California wage-hour class actions can easily total several hundred thousands of dollars or more. *See, e.g., McGuigan v. City of San Diego,* 183 Cal. App. 4th 610, 638 (2010) (noting attorneys' fees paid in settlement of $1.6 million); *Pellegrino v. Robert Half Int'l, Inc.,* 182 Cal. App. 4th 278, 287, 296 (2010) (affirming $558,926.85 in attorneys' fees in exemption misclassification class case, but reversing as to multiplier); *Vasquez v. California,* 45 Cal. 4th 243, 249 (2008) (noting award of $435,000 in attorneys' fees for class claims involving failure to pay wages, liquidated damages, penalties and waiting time penalties). Moreover, the Ninth Circuit recently concluded "that the amount in controversy is not limited to damages incurred prior to removal—for example, it is not limited to wages a

plaintiff-employee would have earned before removal (as opposed to after removal). Rather, the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious." *Chavez v. JPMorgan Chase & Co.,* 888 F.3d 413, 414-15 (9th Cir. 2018); *see also Baker v. Tech Data Corp.*, 2022 U.S. Dist. LEXIS 66950 at *4 (C.D. Cal. Apr. 11, 2022) ("Recent estimates for the number of hours expended through trial for employment cases in this district have ranged from 100 to 300 hours."); *Lucas v. Michael Kors (USA) Inc.,* No. CV 18-1608-MWF (MRWx), 2018 U.S. Dist. LEXIS 78510, at *32 (C.D. Cal. May 9, 2018) ("unaccrued post-removal attorneys' fees can be factored into the amount in controversy.").

29.     "Courts in this circuit have held that, for purposes of calculating the amount in controversy in a wage-and-hour class action, removing defendants can reasonably assume that plaintiffs are entitled to attorney fees valued at approximately twenty-five percent of the projected damages." *Fong v. Regis Corp.,* No. C 13-04497 RS, 2014 U.S. Dist. LEXIS 275, at *23 (N.D. Cal. Jan. 2, 2014); *see also Herrera v. Carmax Auto Superstores Cal., LLC,* No. EDCV-14-776-MWF (VBKx), 2014 U.S. Dist. LEXIS 188729, at *12 (C.D. Cal. June 12, 2014) ("Substantial authority supports a 'benchmark' 25 percent attorneys' fees figure to be added to any claim for which attorneys' fees are available."); *Hamilton v. Wal-Mart Stores, Inc.,* No. ED CV 17-01415-AB (KKx), 2017 U.S. Dist. LEXIS 162856, at *16 (C.D. Cal. Sep. 29, 2017) ("The Ninth Circuit has allowed an estimate fee award of 25% of a plaintiff's damages in calculating the amount in controversy under CAFA."); *Gutierrez v. Stericycle, Inc.,* No. LA CV15-08187 JAK (JEMx), 2017 U.S. Dist. LEXIS 20975, at *51 (C.D. Cal. Feb. 14, 2017) ("it is appropriate to include in the calculation of the amount in controversy a potential fee award of 25% of the value of certain of the substantive claims.").

30.     The Court should therefore consider attorneys' fees of at least $1,114,583, a conservative estimate at 25% of the aggregate amount in controversy calculated in Paragraph 27 above in connection with Plaintiffs' putative class claims for unpaid overtime wages, unpaid minimum wages, meal period violations, rest period violations, wage statement violations, and expense reimbursements. *See, e.g., Oda v. Gucci Am., Inc.,* 2015

U.S. Dist. LEXIS 1672, at *11-13 (C.D. Cal. 2015) (finding the defendant's assumptions regarding attorneys' fees to be "reasonable" on removal where the defendant stated "Plaintiffs would recover a 25 percent fee" totaling "$1,329,245," based on "the amount in controversy before attorneys' fees" of "$5,316,978").

31.    Thus, for the reasons discussed above, and without conceding or admitting to the underlying merit of Plaintiffs' claims, it is plausible that the aggregate amount in controversy in connection with Plaintiffs' putative class claims (over **$9,092,916**[8]) surpasses the $5,000,000 jurisdictional threshold required under CAFA.

## NOTICE TO ALL PARTIES AND STATE COURT

32.    In accordance with 28 U.S.C. § 1446(d), the undersigned counsel certifies that a copy of this Notice of Removal and all supporting papers will be served promptly on Plaintiffs' counsel and filed with the Clerk of the San Bernadino Superior Court. Therefore, all procedural requirements under 28 U.S.C. § 1446 will be followed and satisfied.

## CONCLUSION

33.    Based on the foregoing, Defendant hereby removes the above-captioned action from the San Bernadino County Superior Court to this Court based on CAFA requirements (28 U.S.C. §§ 1332(d), 1441, 1446 and 1453) and respectfully requests that this Court retain jurisdiction for all further proceedings.

Dated:  September 14, 2022                JACKSON LEWIS P.C.

                                                By:    _/s/ Eric J. Gitig_
                                                        Mia Farber
                                                        Eric J. Gitig

                                                Attorneys for Defendant
                                                TA OPERATING LLC

4864-4019-9474, v. 1

---

[8]    This amount does include potential damages for Plaintiffs' seventh and ninth causes of action (failure to timely pay wages during employment and violation of Labor Code section 227.3), which would further increase the amount in controversy in connection with Plaintiffs' putative class claims.